United States District Court
Southern District of Texas
ENTERED
July 07, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Wanda Warren, Individually, and as Representative of the Estate of Khari Reid, Deceased, *Plaintiff*, | § § § § | |
| | § | Civil Action H-25-6156 |
| v. | § § | |
| Carmensita Transportation LLC and Erik Vera, *Defendants*. | § § § | |

**MEMORANDUM AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND**

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 8. Pending before the court is Plaintiff's Motion to Remand. ECF No. 7. The court recommends that the Motion be **DENIED.**

***1. Background and Procedural History***

This case arises from a motor vehicle collision in Fort Bend County, Texas, on August 25, 2025. ECF No. 22 at 2. Khari Reid was a passenger in a vehicle that collided with a tractor-trailer operated by Erik Vera, an employee of Carmensita Transportation LLC (Carmensita). ECF No. 7 at 1. Reid was killed in the collision. ECF No. 22 at 2.

Plaintiff Wanda Warren, Reid's mother, sued Vera and Carmensita (collectively, Defendants), both individually and on behalf of Reid's estate. ECF No. 23. As representative of Reid's estate, Plaintiff asserts a survival action, alleging various theories of negligence and gross negligence by Defendants. *Id.* at 2–6; *see* Tex. Civ. Prac. & Rem. Code Ann. § 71.021 (providing for survival actions, which "survive[] to and in favor of the heirs, legal

representatives, and estate of the injured person"). Individually, Plaintiff brings a wrongful death claim for the loss of Reid. *Id.* at 6.

Plaintiff initially filed this lawsuit in the 295th Judicial District Court of Harris County, Texas in December 2025. ECF No. 1-4. Two days later—before either of the Defendants were served with process—Carmensita unilaterally removed the case to federal court. ECF No. 1 at 3.[1] In its Notice of Removal, Carmensita alleged that the court has diversity jurisdiction. *Id.* at 2. Carmensita alleged that both Defendants are citizens of Texas, and Plaintiff is a citizen of Georgia. *Id.* Carmensita made no mention of Reid's citizenship.

On January 8, 2026, Plaintiff filed the instant Motion to Remand. ECF No. 7. She argues that the court lacks subject matter jurisdiction. *Id.* Plaintiff asserts that the parties are not completely diverse, and that Carmensita's removal was procedurally improper. *Id.* at 3. Plaintiff argues that Reid's citizenship must also be considered because of the survival claim brought on behalf of his estate. *Id.* at 4. Doing so, she argues, destroys diversity, because, according to Plaintiff, Reid was a Texas resident prior to his death. *Id.* at 2, 5. Plaintiff points to her own affidavit as evidence of Reid's residency. Pl. Aff., ECF No. 7 at 9–11. In the affidavit, Plaintiff states that Reid and his friend, Reggie Massie, Jr., moved to a townhome in Houston, Texas, in 2025. *Id.* ¶ 5. She states that Reid intended to "make Houston his new residence . . . ." *Id.* ¶ 8.

Carmensita timely responded to Plaintiff's Motion. ECF No. 11. It conceded that Reid's citizenship is relevant to the diversity jurisdiction analysis for Plaintiff's claims on behalf of Reid's estate. *Id.* ¶ 10. However, it disputed Plaintiff's argument

[1] Erik Vera was served on February 17, 2026, pursuant to an order issued by the court on February 12, 2026. ECF Nos. 15, 19.

that Reid was a citizen of Texas at the time of his death. *Id.* It requested that the court allow jurisdictional discovery if it believed that there was a question regarding Reid's citizenship. *Id.* at 5. The court granted the request for limited jurisdictional discovery. ECF No. 15.

After engaging in jurisdictional discovery, Carmensita filed an Amended Response. ECF No. 22. Plaintiff did not file a reply or submit any additional evidence. In its Amended Response, Carmensita reasserts that Reid was a resident of Georgia at the time of his death. *Id.* Therefore, it argues, there is complete diversity of the parties, and the court has diversity jurisdiction over this matter. *Id.* Carmensita did not address Plaintiff's argument concerning the alleged procedural defects in the removal process.

***2. Evidentiary Objection***

As an initial matter, the court considers Carmensita's evidentiary objections to paragraphs 5 through 8 of Plaintiff's affidavit.[2] ECF No. 22 ¶ 14. The affidavit, if accepted into evidence, shows that Reid told his mother he was moving to Texas where he intended to stay; that Reid's mother believed that he took all of his possessions from her home; that Reid sent his mother a video tour of the apartment where he was staying; and that Reid received packages his mother sent to him in Houston. ECF No. 7 at 9–10. Carmensita objects that these statements are hearsay and are outside of Warren's personal knowledge. ECF No. 22 ¶ 14.

As will be discussed below, there is no doubt that Reid traveled to Texas and stayed with Massie. However, the preponderance of the evidence demonstrates that he did not intend to live in Texas permanently. Thus, even considering Warren's

[2] There are two paragraphs numbered "5" in Plaintiff's affidavit. Pl. Aff. at 9–10. The court considers both paragraphs and uses "paragraph 5" to refer to both, collectively.

affidavit, the outcome is the same. Carmensita's objections are **OVERRULED** as moot.

### *3. Legal Standard and Analysis*

A defendant may remove a civil action from state court if the federal courts would have had original jurisdiction had the action been filed in federal court. 28 U.S.C. § 1441(a); *In re Deepwater Horizon*, 745 F.3d 157, 162 (5th Cir. 2014). "The party seeking to assert federal jurisdiction . . . has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). "[O]perative facts and pleadings are evaluated at the time of removal." *Deepwater Horizon*, 745 F.3d at 163. "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

#### *A. Diversity Jurisdiction*

The court must first determine whether it has diversity jurisdiction. Removal may be based on diversity jurisdiction when the amount-in-controversy exceeds $75,000 and the dispute is between citizens of different states. 28 U.S.C. § 1332; *Priester v. Deutsche Bank Nat'l Tr. Co.*, 832 F. App'x 240, 244 (5th Cir. 2020).

The parties do not dispute that the amount-in-controversy requirement is satisfied. The amount in controversy is ordinarily determined based on "the sum demanded in good faith in the initial pleading." *Durbois v. Deutsche Bank Nat'l Tr. Co.*, 37 F.4th 1053, 1056 (5th Cir. 2022) (citing 28 U.S.C. § 1446(c)(2)). Plaintiff's Original Petition requests damages in excess of $1,000,000. ECF No. 1-4 at 1.

The parties dispute whether the citizenship requirement is satisfied. Complete diversity of citizenship between the parties is required under Section 1332. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Complete diversity "means that 'all persons on one side of the controversy [must] be citizens of different states than all persons on the other side.'" *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 281 (5th Cir. 2020) (alteration in original) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "[D]iversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 386–87 (5th Cir. 2018) (emphasis omitted) (quoting *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)).

The parties agree about the citizenship of Plaintiff and Defendants. The citizenship of individual persons "is determined by domicile, which requires residency plus an intent to make the place of residency one's permanent home." *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023). Plaintiff is a citizen of Georgia, and Vera is a citizen of Texas. ECF Nos. 1 at 2; 1-4 at 2. Carmensita is a limited liability company. *Id.* The citizenship of a limited liability company "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). Carmensita has only one member—an individual person who is a citizen of Texas. ECF No. 1 at 2. Therefore, Carmensita is a citizen of Texas for the purposes of diversity jurisdiction.

Reid's citizenship is at issue. When a plaintiff brings claims as the representative of a decedent's estate, the decedent's citizenship is attributed to the plaintiff. 28 U.S.C. § 1332(c)(2). Because Plaintiff asserts claims as representative of Reid's estate, the issue of whether complete diversity exists is dependent upon Reid's citizenship at the time of his death.

The evidence shows, and the parties do not dispute, that Reid was domiciled in Georgia until at least "late May or early June 2025," when he traveled to Texas. ECF No. 7 at 10. However, the parties dispute whether that travel constituted a change in Reid's domicile.

"A person's domicile persists until a new one is acquired or it is clearly abandoned." *Coury*, 85 F.3d at 250. When a litigant's citizenship is disputed, the court looks to "all evidence shedding light on the litigant's intention to establish domicile." *Id.* at 251. The court may consider a variety of factors, including the "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* (citations omitted). "No single factor is determinative" in the analysis. *Id.* "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled little weight if it conflicts with the objective facts." *Id.* (citations omitted).

Plaintiff argues that Reid moved to Texas with the intent of establishing a new domicile. ECF No. 7. To support her argument, Plaintiff relies on her own January 2026 affidavit, as well as a video tour of the townhome that was recorded and sent to her by Reid. *Id.* In her affidavit, Plaintiff asserts that Reid took all of his personal belongings from her home in Georgia and moved to Texas, intending to make Texas his "new home." Pl. Aff. ¶ 5. She also argues that she sent packages to Reid using a P.O. Box in Houston, Texas. *Id.* ¶ 7.

Carmensita, on the other hand, argues that Reid remained a Georgia resident despite his travel to Texas. ECF No. 22. It notes that Reid voted in Georgia until at least November 2024, and he remained a registered Georgia voter until his death. *Id.* ¶ 9 (citing ECF No. 22-7). It also points out that in March 2025, Reid certified

to a Georgia court, in connection with his release on bail on a criminal charge, that his home address was in Riverdale, Georgia. *Id.* ¶ 7 (citing ECF No. 22-3). One of his bail conditions was that he would not change his residence without first notifying the court. ECF No. 22-3. There is no indication that he gave such notice. Thus, Reid represented to a judicial officer that he intended to reside in Georgia permanently, or at least until the criminal case against him was resolved. Reid knew that he was under a legal obligation to inform the court of any changes to his home address, and that failure to comply with that obligation would result in strong legal consequences. ECF No. 22 ¶8 (citing ECF Nos. 22-3, 22-4, 22-6). Despite his awareness of that condition, upon traveling to Texas, Reid did not inform the court that he intended to change his address. *Id.* (citing ECF No. 22-6). In May 2025, after Reid failed to appear for a hearing in the Georgia court, a bench warrant was issued for his arrest. ECF No. 22-5. It turns out that Plaintiff was unaware of her son's criminal charges. ECF No. 22-9 at 9.

On July 9, 2025, Reid was charged with a criminal offense in Fort Bend County, Texas. ECF No. 22-8 at 1. Carmensita points out that during those proceedings, Reid completed a sworn financial data sheet in which he stated that he had no rent or mortgage payments, no car payment or insurance, and no household utilities expenses. ECF No. 22 ¶ 20 (citing ECF No. 22-8 at 5). The financial data sheet indicates that Reid lived "w[ith] a friend." ECF No. 22-8 at 5. According to Plaintiff, that friend was Massie, who purportedly moved with Reid to a Houston, Texas townhome. Pl. Aff. ¶ 5. However, Reid was not listed on the townhome lease, and the lease indicated that Massie was the only occupant of the property. ECF No. 22-10 at 6–7.

As further evidence that Reid lacked the requisite intent to become a domiciliary of Texas, Carmensita points to Plaintiff's deposition testimony. Plaintiff testified that Reid had traveled to, or planned to travel to, at least two other states and Mexico during the same three-month period in which Plaintiff alleges that Reid moved permanently to Texas. ECF No. 22-9 at 7:18–8:4.

In the face of the competing narratives presented by the parties, the court cannot disregard the fact that Reid made an affirmative representation to a judicial officer that he was a resident of Georgia. Under his bail conditions, he was legally obligated to reside in Georgia. It actually appears that Reid was on the lam in Texas, given that there was an outstanding warrant for his arrest in Georgia. Given the strong evidence to the contrary, and the fact that Plaintiff was not even aware of Reid's criminal charges, the court gives little weight to Plaintiff's statements about Reid's intention to remain in Texas. Considering all of the evidence that sheds light on Reid's intention to establish domicile, the court concludes that Carmensita has shown, by a preponderance of the evidence, that Reid was not a citizen of Texas at the time of his death. There is complete diversity of citizenship between the parties on all claims. Therefore, the court may exercise diversity jurisdiction over this matter.

The court turns its attention to Plaintiff's argument that Carmensita's removal was procedurally improper.

### *B. Snap Removal*

The forum-defendant rule provides that an action that is "otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Snap removal usually allows a non-forum defendant to bypass the forum-defendant rule

if it removes before the forum-defendant is served. *Tex. Brine Co. v. Am. Arb. Ass'n Inc.*, 955 F.3d 482, 487 (5th Cir. 2020).

"[T]he plain language of § 1441(b)(2), i.e., 'properly joined and served,' creates an exception allowing removal by even a forum defendant prior to being served with process." *Anaya v. Schlumberger Tech. Corp.*, No. 24-20170, 2024 WL 5003579, at *3 (5th Cir. Dec. 6, 2024). The Plaintiff in *Anaya* appealed the snap removal by a forum-defendant, claiming that Section 1441(b)(2)'s language is "ambiguous and should be interpreted in line with congressional intent and good policy to disallow snap removal." *Id.* at *2. The Fifth Circuit disagreed and affirmed the lower court's decision to permit snap removal by a forum-defendant prior to service. *Id.* at *3. The court relied on the interpretation of Section 1441(b)(2) in *Texas Brine*—that subsection "is unambiguous and inapplicable until the defendant is served." *Id.* The court held that Section 1441(b)(2)'s plain language "allow[s] removal by even a forum defendant prior to being served with process." *Id.*

There is no dispute here that removal was effectuated prior to service on either defendant. ECF Nos. 1 at 3; 7 at 6. Based on the Fifth Circuit's decision in *Anaya*, and because the court can properly exercise diversity jurisdiction, Carmensita's snap removal was proper.

***4. Conclusion***

The requirements of diversity jurisdiction are satisfied, and Carmensita's exercise of snap removal was proper. Accordingly, the court recommends that Plaintiff's Motion to Remand, ECF No. 7, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal

conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on July 7, 2026.

Peter Bray
United States Magistrate Judge